Argued January 22, reversed February 5, costs taxed February 13, 1929.

UNITED STATES AUTOMOBILE SERVICE CLUB *v.* I. H. VAN WINKLE, ATTORNEY GENERAL, ET AL.

(274 Pac. 308.)

For appellant there was a brief and oral arguments by *Mr. Roy F. Shields* and *Mr. E. K. Piasecki*.

For respondents there was a brief over the name of *Mr. I. H. Van Winkle*, Attorney General, with an oral argument by *Mr. Willis S. Moore*, Assistant Attorney General.

RAND, J.—1, 2. This suit was instituted to test the validity of an act (Chapter 419, Laws 1927), defining motor club service and providing for licensing companies engaged in rendering such service for a consideration. By Section 1 of the act the state in-

surance commissioner and persons authorized to act for him are authorized to issue the licenses provided for in the act upon compliance by the applicants with the terms of the act. Among other definitions, that section defines the word "company" as "any person, firm, copartnership, company, association or corporation engaged in selling, furnishing or procuring, either as principal or agent, for a consideration, motor club service as herein defined," and defines "motor club service" as follows:

"The rendering, furnishing or procuring of towing service, emergency road service, insurance service, bail bond service, legal service, discount service, financial service, buying and selling service, theft service, map service and touring service, or any three or more thereof, as herein defined, to any person or persons in connection with the ownership, operation, use or maintenance of a motor vehicle by such other person or persons in consideration of such other person or persons being or becoming a member or members of any company, rendering, procuring or furnishing the same, or being or becoming in any manner affiliated therewith, or being or becoming entitled to receive membership or other motor club service therefrom by virtue of any agreement or understanding with any such company."

Section 2 of the act provides:

"No company, nor any agent, as herein defined, doing business in this state shall execute, issue or deliver any service contract to any person or persons owning or operating motor vehicles without first having obtained a license from the commissioner as provided for in this act, nor shall any such company or agent collect or receive from any person or persons in advance of the execution, issuance or delivery of any such service contract any money or other thing of value upon any promise or agreement to execute, issue or deliver any such service contract, without

first having obtained a license from said commissioner, as provided for in this act.''

Section 3 of the act provides:

''No license shall be issued by the commissioner until the company has filed with him the following:

1. A formal application in such form and detail as the commissioner may require, executed under oath by its president or other principal officer;

2. A copy in the form of its contract;

3. A certified copy of its charter or articles of incorporation and its bylaws, if any;

4. A financial statment in such form and detail as the commissioner may require, executed on oath by its president or other principal officer;

5. A certificate from the state treasurer of the state of Oregon that it has complied with Section 4 of this act in all cases where a deposit of cash or a bond is required by this act;

6. A certificate from the corporation commissioner of the state of Oregon, in the event it be a corporation, that it has complied with the corporation laws of said state.

(b) No license shall be issued by the commissioner until the company has paid to the commissioner $100 as an annual license fee, or the *pro rata* portion thereof necessary to be paid to the end of the current calendar year from the date of the application for such license.

(c) No license shall be issued by the commissioner until the company has satisfied him by such examination as he may make and such evidence as he may require, in his discretion, that such company has complied with the laws of the state of Oregon and that its management is trustworthy and competent.''

Section 4 of the act provides:

''(a) No license shall be granted to a company as herein defined, except as hereinafter stated, until it has deposited with the state treasurer of the state of Oregon the sum of $25,000 in cash or in lieu thereof

a bond in a form prescribed by the commissioner payable to the state of Oregon in the sum of $25,000, with surety approved by the commissioner, conditioned upon the faithful performance of its service contracts and payment of any fines or penalties levied against it for failure to comply with this act; provided, however, that when any company, as herein defined, shall prove to the commissioner that it has been in continuous, active, operation in the state of Oregon for a period of more than five years immediately last past and has a paid membership of more than 5,000 members within the state of Oregon, or that there are more than 5,000 holders of its service contracts within the state of Oregon, and that it is being properly managed, is rendering to its members the services promised to them, and is financially responsible, no such cash deposit or bond shall be required while such company remains in such condition. The foregoing cash deposit or bond is not required in any instance as a penalty, but for the protection of the public only."

Section 5 provides:

"Every license issued hereunder shall expire annually on January 1, of each year, unless sooner revoked or suspended, as hereinafter provided."

Section 6 provides:

"If the commissioner shall, at any time for cause shown and after a hearing, determine that a company has violated any provision or provisions of this act, or that it is insolvent, or that its assets are less than its liabilities, or that it or its officers refuse to submit to an examination, or that it is transacting business fraudulently, or that its management or business methods are improper or hazardous to the holders of its service contracts, he shall thereupon revoke or suspend its license and shall give notice thereof to the public in such manner as he may deem proper."

Under Section 7 every company is required to file annually with the commissioner a financial statement under oath showing its financial condition upon the last day of the preceding year. Section 8 provides that no service contract can be entered into until a copy of the form of contract has been on file with the commissioner thirty days and has been approved by him. Section 10 of the act provides what shall be contained in the service contract to be entered into. Section 11 provides that no person shall solicit the purchase of a service contract unless the company making such contract shall be duly licensed. Section 14 directs that the act shall not apply to a duly authorized attorney at law acting in the usual course of his profession or to any insurance, bonding or surety company which has been regularly licensed to do business within the state. There are other provisions contained in the act but they have no bearing upon the questions involved here.

The plaintiff was incorporated under the laws of this state on November 24, 1925, and, by its articles of incorporation, is authorized to transact the business defined in and sought to be regulated by the act in question, and has entered into contracts to perform the service defined in the act with 3,500 persons in this state but not having been engaged in business for more than five years and having less than 5,000 holders of its service contracts within the state, it is required by the act, in order to obtain a license authorizing it to transact its corporate business, either to deposit $25,000 in money with the state treasurer or execute and deliver a bond to the state for that amount, while under the terms of the act its principal competitor which has been engaged in transacting business more than five years and has more than

5,000 contracts to perform the service is not required to make any deposit or give any bond before obtaining a license authorizing it to transact its business. These facts were alleged in the complaint and because of this discrimination, it was alleged that the statute is invalid. A demurrer was filed to the complaint and sustained in the lower court and, upon plaintiff declining to plead further, a judgment was entered dismissing the suit, from which judgment plaintiff has appealed.

It is alleged in the complaint and admitted by the demurrer that there is one company or corporation in competition with plaintiff which has been in business for more than five years and has contracted to perform the service provided for in the act with more than 5,000 persons within the state and, therefore, possesses the qualifications defined in the act which entitle it to transact business without the giving of any security by way of a deposit or bond, while plaintiff and all other companies are required either to make a deposit of $25,000 with the state treasurer or execute a bond to the state in that sum before being permitted to obtain a license or to transact the business defined by the act. It is also alleged in the complaint and admitted by the demurrer that before the passage of the act plaintiff had entered into contracts with various persons obligating it to perform for them the service defined in the act and it is contended that, as to such contracts, the act is void because it contravenes Article I, Section 10, of the federal Constitution and Article I, Section 21, of the state Constitution. It is also contended that the act violates the Fourteenth Amendment to the federal Constitution in that it deprives plaintiff of its property and liberty without due process of law and

denies to plaintiff the equal protection of the laws and also grants to others in the same pursuit and under like conditions, privileges and immunities not conferred upon plaintiff by requiring plaintiff to furnish an excessive cash deposit or enter into a bond in the sum of $25,000 without any regard to the amount of business carried on by them or the extent of their liabilities, and this it is contended also violates Article I, Section 20, of the state Constitution which provides that "No law shall be passed granting to any citizen or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens."

On the other hand, defendants maintain that a corporation which has been engaged in business for more than five years and which has contract relations with more than 5,000 persons is presumably better able to perform its obligations than one which has been engaged in business for a less period and has contracted with a less number of persons and, based upon such presumption, they insist that the legislature, in the exercise of the police power, did have authority to make the classification provided for in Section 4 of the act. Unquestionably, if any substantial distinction can be said to exist between a corporation of the one class and a corporation of the other class, then the question of whether a classification based upon such difference should be made was for the legislature to decide and its determination of the question would be conclusive upon the courts and the classification would be upheld, if it were a reasonable and not arbitrary classification, even though burdens were imposed upon one class which were not imposed upon the other, while, on the other hand, if no substantial distinction does exist, then the imposition of

burdens upon one class of corporations which, under like conditions, are not shared by corporations of the other class would be unconstitutional and particularly so where, as here, corporations of both classes are engaged in the same pursuit at the same time and place and under similar conditions.

We can perceive no substantial distinction between a corporation which has been engaged in business for more than five years and one which has been engaged in business for four years or between a corporation which has contracted with more than five thousand persons and one which has contracted with only 3,500 persons. They are all engaged in the same pursuit and at the same time and place and under identically similar conditions. They enter into a form of contract which must first be approved by the state insurance commissioner and they all engage to perform the same kind of service. What basis, therefore, can there be for any discrimination between them? The act does not attempt to regulate the fees they are to charge, nor does it contain any reference to the extent of their obligations and liabilities. It recognizes only the length of time they have been engaged in business and the volume of business transacted. Neither of these things bears any relation to the objects and purposes of the statute. If any distinction is to be made, it would seem that the necessity for requiring a bond from the corporation doing the larger volume of business would be greater than from one doing a less volume. It is elementary that persons engaged in the same pursuit at the same time and place and under like conditions are entitled to be governed by a general law applicable to all who are so engaged.

" * * In order that a statute be valid which contains a classification of persons or things for the pur-

pose of legislation, such classification must be a reasonable one and must be based on real distinctions in the subject-matter which bear some relation to the objects sought to be accomplished by the statute. 12 C. J., pp. 1148, 1149." *In re Oregon Tunnel District No. 1,* 120 Or. 594 (253 Pac. 1).

3, 4. It seems to be contended by defendants that because this law was enacted under the police power, the classification should be upheld upon any ground which might have seemed plausible to the legislature even though there was no reasonable ground for the discrimination provided for in the act. While the police power is very broad and far-reaching, there are limits to the valid exercise of the power although such limits are hard to define. The legislature is not the final judge of the limitations of the police power, but as said by Mr. Justice HARRIS in *Union Fishermen's Co.* v. *Shoemaker,* 98 Or. 659 (193 Pac. 476, 194 Pac. 854).

" * * * the legislative action must be reasonably necessary for the public benefit, the validity of all police regulations depends upon whether they can ultimately pass the judicial test of reasonableness; and yet, it is also true that it is the legislative function primarily to determine the necessity or expediency of measures adopted. When, however, the courts are called upon to apply the judicial test of reasonableness, they will accord to the legislature a large discretion in determining, not only what the interests of the public require, but also what measures are necessary for the protection of such interests,"

and in applying this test, "the presumption is in favor of the reasonableness and validity of the regulation." Whenever a state statute enacted in pursuance of the police power contravenes any express provision of the federal Constitution, it is void and

however broad the scope of the police power may be, "it is always subject to the rule that the legislature may not exercise any power that is expressly or impliedly forbidden to it by the state Constitution." 12 C. J., § 440.

The classification provided for by Section 4 of the act is not founded upon any substantial difference between the two classes provided for. It denies to plaintiff the equal protection of the laws by imposing upon plaintiff a burden which is not imposed upon one of plaintiff's competitors, which is engaged in the same pursuit at the same time and under like circumstances and, therefore, violates the Fourteenth Amendment of the federal Constitution. It also contravenes Article I, Section 20, in that it grants to others "privileges or immunities which, upon the same terms, shall not equally belong to all citizens." The provisions contained in Section 4 are, therefore, unconstitutional and void. But this does not have the effect of making the other provisions of the act invalid for the reason that Section 4 may be separated from the remainder of the act without destroying or rendering nugatory the remainder of the act. Under subdivision "c" of Section 3, the insurance commissioner of the state is forbidden to issue a license until the applicant "has satisfied him by such examination as he may make and such evidence as he may require, in his discretion, that such company has complied with the laws of the State of Oregon and that its management is trustworthy and competent." By Section 6, at any time for cause shown and after a hearing, if the commissioner shall determine that the company has violated any of the provisions of the act, or is insolvent, or that its assets are less than its liabilities, or that its officers refuse to submit to

an examination, or if it has been transacting business fraudulently, or if its management or methods are improper, he may revoke the license. By subdivision "c" of Section 10, the holder of its contract is entitled to the unused portion of the consideration paid for such contract, "calculated on a *pro rata* basis without any deductions." By another provision the company is compelled to make an annual report under oath of its financial condition, and by these and other provisions all companies and corporations engaged in the business defined in the act are subject to control and regulation within the limits of the statute by the state insurance commissioner, notwithstanding that Section 4 of the act is invalid.

Upon the grounds stated, we hold that Section 4 of the act is unconstitutional and void and that the remainder of the act is still in full force and effect. The decree of the lower court must, therefore, be reversed and a decree will be entered here in accordance with the views expressed in this opinion, and it is so ordered.         REVERSED.   COSTS TAXED.

BELT, MCBRIDE AND ROSSMAN, JJ., concur.